■ VIRGINIO BATTANTA, Plaintiff, v HUGO BUNZL, Defendant. HUGO BUNZL, Appellant, v VIRGINIO BATTANTA, Defendant, and RITA FARINA, Counterclaim Defendant-Respondent. [657 NYS2d 637] — Order, Supreme Court, New York County (Richard Lowe, III, J.), entered November 15, 1996, granting counterclaim defendant's motion to dismiss counterclaims for lack of personal jurisdiction, unanimously reversed, on the law and on the facts, with costs, the motion to dismiss denied and the counterclaims reinstated, with leave to defendant Bunzl to replead in accordance with the decision herein.

In 1991, plaintiff Virginio Battanta, defendant Hugo Bunzl, and a third person formed BBS Norwalk One, Inc. ("BBS"), a Delaware corporation, to effect the purchase of a building in Norwalk, Connecticut. Bunzl was vice president, treasurer, a director, and, together with Battanta, shareholder of 90% of the outstanding stock of the corporation. Also in 1991, Bunzl and Battanta established a second Delaware corporation, B&B

Property, Inc. ("B&B"), for the purpose of holding 90% of BBS' shares; Bunzl was vice president and director of B&B, and was described on the certificate of incorporation as a holder, together with Battanta, as tenant in common of the corporation's 100 shares. In connection with the financing of the building purchase, Barclays Bank issued a $3 million note to B&B in January 1992, for which B&B pledged its stock as collateral. As additional collateral, Mondial Toce ("Mondial"), an Italian real estate company owned by Battanta's spouse Rita Farina, pledged its interest in a subsidiary corporation, Molino 87 SRL ("Molino"). For various reasons, Barclays sought payment on the note by May 1993, and, when such payment was not forthcoming, demanded payment of Mondial. In May 1994, Barclays assigned to Mondial all rights to the note and B&B's shares in exchange for a payment of $3,218,758.33. Farina subsequently foreclosed upon the B&B shares, voted Bunzl out of his positions as officer and director of BBS and B&B, and elected other family members to those positions. Battanta was elected president and treasurer of B&B and president of BBS.

Battanta subsequently commenced the instant action seeking, *inter alia*, a judicial declaration that Bunzl had held only a nominal interest in BBS and B&B; he supported this claim with a document, purportedly written by Bunzl, confirming Bunzl's status as mere nominee. In response, Bunzl denied the document's authenticity and raised a series of counterclaims against Battanta and Farina, including an allegation that the pair had conspired to deprive him of his interest in the corporations. In June 1996, Farina moved to dismiss the proceeding against her on grounds of lack of jurisdiction. By decision dated September 27, 1996, and order dated November 7, 1996, Supreme Court granted the motion, finding that Bunzl's allegations of conspiracy failed to confer upon the court personal jurisdiction over Farina. Acting *sua sponte*, the court further held that Bunzl had failed to state a cause of action against Farina. Bunzl appealed.

We reverse. Bunzl's central claim in this matter alleges that Battanta committed tortious conduct in New York, through the breach of fiduciary duty owed to Bunzl as a fellow shareholder, officer and director, upon the suggestion and with the active cooperation of Farina as both principal and agent. Since the record contains an admission by Battanta that his wife prompted him to draft the controversial nominee document, and further contains Farina's assertions that she bought the substitute note from Barclays to protect her interests in Mondial and Molino, as well as her husband's interest in B&B,

a sufficient nexus exists between Farina and the purported tortious conduct to confer jurisdiction over Farina as a co-conspirator under CPLR 302 (a) (2). We find further that defendant Bunzl should be permitted to replead any viable claims against Farina as a co-conspirator. Concur—Murphy, P. J., Sullivan, Milonas and Mazzarelli, JJ.